REPLACEMENTS, LTD., PLAINTIFF v. MIDWESTERLING, A GENERAL PARTNERSHIP, DEFENDANT

No. COA98-1013

(Filed 4 May 1999)

### 1. Jurisdiction— long-arm—specific

The trial court erred in an action for misappropriation of trade secrets by granting defendant's motion to dismiss for lack of personal jurisdiction where the controversy arose out of defendant's contacts with this state and specific jurisdiction was sought. Defendant admitted sending the mail in question to at least 50 North Carolina suppliers soliciting their business and the misappropriation therefore concluded in North Carolina. Moreover, defendant engaged in other acts which may have originated in Missouri but were directed to and concluded in North Carolina. Defendant therefore availed itself of the privilege of conducting business in North Carolina on numerous occasions.

### 2. Jurisdiction— long-arm—general

The trial court erred in an action for misappropriation of trade secrets by granting defendant's motion to dismiss for lack of personal jurisdiction where, assuming that general jurisdiction analysis applied, defendant maintained systematic and continuous contacts with North Carolina through its business relationship with plaintiff and availed itself of the privilege of doing business here through direct mail to at least 50 residents,

REPLACEMENTS, LTD. v. MIDWESTERLING

[133 N.C. App. 139 (1999)]

advertisements in journals circulated in North Carolina, and advertisement on an Internet website available to North Carolina citizens.

Appeal by plaintiff from an order entered 25 March 1998 by Judge Michael E. Beale in Guilford County Superior Court. Heard in the Court of Appeals 1 April 1999.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr. and Natasha Rath Marcus, for plaintiff-appellant.*

*Anderson & Associates, P.C., by Joseph L. Anderson, for defendant-appellee.*

HUNTER, Judge.

The dispositive issue in this case is whether the trial court erred in granting the defendant MidweSterling's motion to dismiss for lack of personal jurisdiction.

Plaintiff Replacements, Inc. (Replacements) is a North Carolina corporation which buys and sells discontinued and active china, crystal, flatware, and collectibles. Defendant MidweSterling (MidweSterling) is a general partnership headquartered in Missouri which deals in sterling flatware, holloware, and other silverware. Replacements filed the complaint in this matter alleging causes of action against defendant MidweSterling for misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act. Specifically, Replacements contends that in August 1997, MidweSterling came into possession of its suppliers list and used it to contact potential customers in North Carolina without the consent of Replacements. MidweSterling did not answer, but instead filed a motion to dismiss for lack of personal jurisdiction. The trial court granted MidweSterling's motion to dismiss on 25 March 1998. Replacements appeals.

The determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact. *See Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E.2d 676 (1974); *Parris v. Disposal, Inc.*, 40 N.C. App. 282, 253 S.E.2d 29, *disc. review denied*, 297 N.C. 455, 256 S.E.2d 808 (1979). The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evi-

dence in the record; if so, this Court must affirm the order of the trial court. *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 462 S.E.2d 832 (1995). A claim should be dismissed under Rule 12(b)(6) where it appears that plaintiff is not entitled to relief under any set of facts which could be proven. *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 435 S.E.2d 537 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994). Therefore, "[t]he question for the [appellate] court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory, whether properly labeled or not." *Id.* at 300, 435 S.E.2d. at 541.

The evidence presented to the trial court indicates that MidweSterling, by its own admission, mailed an advertisement to at least fifty North Carolina residents in August 1997. While MidweSterling denies appropriating Replacements' trade secrets with the mass mailing, it does not deny that it directly solicited business in this state by mailing advertisement to residents of North Carolina. Additionally, Replacements submitted evidence that MidweSterling has had continual business and contractual business with Replacements prior to the August 1997 mass mailing, including (1) selling and shipping merchandise to Replacements in the amount of approximately $65,000.00; (2) purchasing merchandise from Replacements on at least ten occasions; (3) telephoning Replacements' office in North Carolina on several occasions; (4) contracting with Replacements to participate in Replacements' Star Supplier program, for which MidweSterling has paid $100.00 per year; and (5) maintaining with Replacements a supplier list of various patterns of silverware it is interested in purchasing. MidweSterling admits soliciting "virtually all" of its business through advertisements in nationally-distributed antique, home, interior and similar trade journals and magazines. Those journals and magazines are distributed in North Carolina and are available to North Carolina residents. MidweSterling also maintains a website, which allows residents throughout all the United States, including North Carolina, to place orders via internet access.

Following its examination of the evidence and oral arguments of counsel, the trial court made the following findings of fact:

[T]he plaintiff has offered no evidence to support that the alleged misconduct complained about in the Complaint occurred within the state of North Carolina, but that instead all of the evidence is

that the alleged conduct occurred outside the state of North Carolina, in the state of Missouri, the Court so finds as a fact, and therefore applies the heightened analysis required by the "general jurisdiction" cases[.]

[P]laintiff has not produced evidence of systematic and continuous contacts between the defendant and the forum state of North Carolina sufficient to support this Court's exercise of personal jurisdiction over the defendant.

Based on these findings, the case was dismissed for lack of personal jurisdiction over the defendant.

In order for MidweSterling to be subject to personal jurisdiction in the case *sub judice*, North Carolina's long-arm statute and the Due Process Clause of the United States Constitution must be satisfied. *Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977). Our long-arm statute provides for personal jurisdiction in any action claiming injury to person or property within this state arising out of an act or omission in this state, N.C. Gen. Stat. § 1-75.4(3) (1996); an act or omission outside this state by the defendant, provided in addition that at or about the time of the injury either:

a. Solicitation or services activities were carried on within this State by or on behalf of the defendant; or

b. Products, materials, or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade.

N.C. Gen. Stat. § 1-75.4(4)a, b (1996). Personal jurisdiction is also property in any action which:

a. Arises out of a promise . . . by the defendant to perform services . . . or to pay for services . . . in this State . . .; or

b. Arises out of services . . . performed for the plaintiff by the defendant within this State . . .; or

c. Arises out of a promise, made anywhere . . . by the defendant to deliver or receive within this State . . . things of value; or

d. Relates to goods . . . shipped from this State by the plaintiff to the defendant on his order or direction; or

e. Relates to goods, documents of title, or other things of value actually received by plaintiff in this State from the defendant . . . .

N.C. Gen. Stat. § 1-75.4(5)a-e (1996).

When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether the defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process. *Murphy v. Glafenhein*, 110 N.C. App. 830, 431 S.E.2d 241, *disc. review denied*, 335 N.C. 176, 436 S.E.2d 382 (1993). In order to satisfy the requirements of the Due Process Clause, the pivotal inquiry is whether the defendant has established "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 835, 431 S.E.2d at 244 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945)). The factors used in determining the existence of minimum contacts include "'(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.'" *Murphy*, 110 N.C. App. at 835, 431 S.E.2d at 244 (*quoting Cherry Bekaert & Holland v. Brown*, 99 N.C. App. at 632, 394 S.E.2d at 655-56 (1990)).

[1] The United States Supreme Court has noted two types of long-arm jurisdiction: "specific jurisdiction," where the controversy arises out of the defendant's contacts with the forum state, and "general jurisdiction," where the controversy is unrelated to the defendant's activities within the forum, but there are "sufficient contacts" between the forum and the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411 (1984). The controversy in this case arises out of the alleged misappropriation of trade secrets of the plaintiff by the defendant. The misappropriation occurred when the defendant obtained the list and used it to send advertisement literature to North Carolina residents. Because the controversy arises out of defendant's contacts with this state, specific jurisdiction is sought. *See Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 348 S.E.2d 782 (1986).

With specific jurisdiction, the court must analyze the relationship among the defendant, the forum state, and the cause of action. *Buck*

*v. Heavner*, 93 N.C. App. 142, 145, 377 S.E.2d 75, 77 (1989). In a case similar to the present one, our Supreme Court held that by making an offer to a North Carolina plaintiff to enter into a contract made in this state and having substantial connection with it, a defendant purposefully availed itself of the protection and benefits of our law and sufficient minimum contacts justified the exercise of specific jurisdiction. *Tom Togs, Inc.*, 318 N.C. at 367-68, 348 S.E.2d at 787. In that case, the Court found that a single contract had substantial connection to North Carolina when (1) defendant contacted plaintiff, whom plaintiff knew to be located in North Carolina, thus the contract for the manufacture of shirts was made in North Carolina; (2) defendant was told the shirts would be cut in North Carolina, and defendant agreed to send its personal labels to plaintiff in North Carolina to be attached, thus defendant was aware that the contract would be performed in this state; (3) shirts were manufactured and shipped from this state; and (4) after defendant became dissatisfied with the shirts, it returned them to this state. *Id.* at 367, 348 S.E.2d at 786-87.

In the present case, the controversy concerns MidweSterling's alleged misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act (Act). "Misappropriation" is defined in the act as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1) (1992). The alleged misappropriation in the present case includes use of the trade secret information to address mail to at least fifty North Carolina suppliers soliciting their business. By its own admission, MidweSterling sent the mail in question, which was received in this state in August 1997. Therefore, the misappropriation, or use, concluded in North Carolina. If a defendant has "purposefully directed" activities towards the state's residents, it has "fair warning" that it may be sued in this forum, and the assertion of specific jurisdiction is proper. *See Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 540-41 (1985)). Beyond the contact from which the controversy in this case arises, MidweSterling has, throughout the past several years, entered into numerous sales contracts with Replacements, a North Carolina corporation doing business in this state. The contracts were substantially performed and the goods were shipped from this state. MidweSterling also contracted to participate in an ongoing Star

Supplier program with Replacements, has maintained a supplier list with Replacements, and has contacted Replacements by telephone calls to North Carolina on several occasions. At the same time, MidweSterling has regularly advertised in magazines and journals which are distributed in North Carolina. While all of these acts may have originated in Missouri, most were directed to, and all concluded in, the state of North Carolina. Most required or solicited performance in North Carolina. Therefore, MidweSterling has availed itself of the privilege of conducting business in this state on numerous occasions, and personal jurisdiction is proper.

Here, the trial court determined that the alleged conduct occurred outside the state of North Carolina, in the state of Missouri, and therefore applied the "heightened analysis required by the 'general jurisdiction' cases." Based on the meaning of misappropriation in the Act and evidence presented to the trial court, we disagree with this finding and the court's ultimate conclusion. However, assuming *arguendo* that the controversy in this case did not arise from the contacts with this forum because the misappropriation of trade secrets occurred outside of North Carolina, we find that the exercise of general jurisdiction would be proper.

**[2]** "General jurisdiction" may be asserted over the defendant even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient "continuous and systematic" contacts between defendant and the forum state. *Fraser v. Littlejohn*, 96 N.C. App. 377, 383, 386 S.E.2d 230, 234 (1989) (*citing Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411. The United States Supreme Court recognized that the threshold for satisfying minimum contacts for general jurisdiction is higher than in specific jurisdiction cases. In order to assert general jurisdiction there must be "substantial" forum-related minimum contacts on the part of the defendant. *Id.*

In the present case, there are substantial forum-related minimum contacts on the part of the defendant. As discussed previously, MidweSterling has maintained systematic and continuous contacts with North Carolina since 1994 through its business relationship with Replacements, including purchases of approximately $65,000.00, participation in Replacements' Star Supplier program, and maintenance of a supplier list with Replacements of patterns of silverware MidweSterling is interested in purchasing. MidweSterling has placed several phone calls to Replacements' North Carolina headquarters

regarding business transactions. It has purposely availed itself of the privilege of doing business here through direct mail to at least fifty residents and advertisements in journals which are circulated in North Carolina. It advertises on an internet website which is available to North Carolina citizens. If a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," it has "thus invok[ed] the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958); *see Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977) (exercise of personal jurisdiction proper over non-resident defendant corporation where it had purposely availed itself of the privilege of doing business here by actively soliciting orders by mailing twenty-seven advertisements to North Carolinians). Therefore, a finding of general jurisdiction in this case would also be proper.

Based on the foregoing, we find controversy at issue arises from the contacts by MidweSterling in the state of North Carolina, which are sufficient to satisfy the requirements of our long-arm statute and the Due Process Clause. Therefore, the exercise of personal jurisdiction is proper. Competent evidence does not support the trial court's findings of fact. Where a trial court's finding of fact is not supported by competent evidence, "the corresponding conclusions of law are likewise erroneous." *Ronald G. Hinson Electric, Inc. v. Union County Bd. of Educ.*, 125 N.C. App. 373, 379, 481 S.E.2d 326, 330 (1997). Accordingly, we find that the trial court erred in the order of 25 March 1998.

Reversed and remanded.

Judges WYNN and WALKER concur.