ROBERT EDWARD BELL, Plaintiff v. JAMES W. MOZLEY, JR., Defendant

No. COA11-393

(Filed 1 November 2011)

**Jurisdiction—personal—insufficient minimum contacts— alienation of affections—criminal conversation—due process rights**

The trial court erred in an alienation of affections and criminal conversation case by denying defendant's motions to dismiss under N.C.G.S. § 1A-1, Rules 12(b)(1) and 12(b)(2). Defendant did not have the requisite minimum contacts with this state for either specific or general jurisdiction purposes, and the trial court's exercise of personal jurisdiction over defendant would violate defendant's due process rights.

Appeal by defendant from orders entered 20 January 2011 by Judge Jesse B. Caldwell, III, in Caldwell County Superior Court. Heard in the Court of Appeals 28 September 2011.

*W. Wallace Respess, Jr., for plaintiff appellee.*

*Morrow Porter Vermitsky & Fowler, PLLC, by Katie Foster Fowler and John F. Morrow, for defendant appellant.*

McCULLOUGH, Judge.

Defendant appeals two orders entered by the trial court denying his motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(2) of the North Carolina Rules of Civil Procedure. We reverse.

BELL v. MOZLEY

[216 N.C. App. 540 (2011)]

## I. Background

Robert Edward Bell ("plaintiff") is a citizen and resident of Beaufort County, South Carolina.

Plaintiff also owns a second home in Blowing Rock, Caldwell County, North Carolina. James W. Mozley, Jr. ("defendant") is also a citizen and resident of Beaufort County, South Carolina.

Defendant is employed with Crescent Resources, LLC ("Crescent"), a company that is headquartered in Charlotte, North Carolina. Defendant serves as the company's vice president and as president of the company's residential division. Beginning in 2005 or 2006, Crescent began a development project in Burke County, North Carolina, which adjoins Caldwell County, North Carolina. This development project is presently ongoing. Defendant leads the development, and in connection with his employment, defendant travels to North Carolina up to six times per year. In addition, defendant communicates with Crescent's home office in Charlotte by telephone twice a month, and by email once per week.

On 30 September 2009, plaintiff filed a complaint against defendant in Caldwell County Superior Court, seeking compensatory and punitive damages upon allegations that defendant had alienated the affections of plaintiff's wife and that defendant had engaged in criminal conversation with plaintiff's wife. In his complaint, plaintiff alleged that he was married to Lisa R. Bell ("Lisa") on 4 March 2000. Plaintiff stated that "two children were born of their marriage," A.B., born in 2002, and N.B., born in 2005. Plaintiff further alleged the following:

10. In late December of 2006, the Plaintiff and his wife Lisa R. Bell invited the Defendant and his wife Janet Mozley to their residence in Blowing Rock, Caldwell County, North Carolina for New Years.

11. During the visit, the minor child [A.B.] became ill and was rushed back to South Carolina by the Plaintiff. Lisa R. Bell remained in the Blowing Rock residence with the Defendant and his wife Janet Mozley.

12. After returning to their residence in Beaufort, South Carolina in January of 2007, the marriage began experiencing difficulties. Later Lisa R. Bell would remark that the difficulties began at the time of the New Year's visit.

Plaintiff also alleged that "[b]eginning in early 2007, the Defendant commenced an adulterous relationship with Lisa R. Bell." Plaintiff and Lisa separated on 16 July 2008 and were divorced on 24 July 2009.

On 22 October 2009, defendant filed motions to dismiss plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure; lack of personal jurisdiction under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure; and failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Thereafter, on 29 July 2010, defendant filed a motion for summary judgment based upon defendant's motions for dismissal for lack of subject matter jurisdiction and personal jurisdiction. Attached to defendant's motion for summary judgment were sworn affidavits by defendant and Lisa. In his affidavit, defendant attested that he is a citizen and resident of Beaufort County, South Carolina, and has "never been a resident of the state of North Carolina." Defendant also stated that his "primary contact with North Carolina" is through his employment with Crescent. Defendant stated that the "only time period" in which he was present in the State of North Carolina in the presence of plaintiff and/or Lisa was on the occasion of the December 2006 New Year's trip. Lisa likewise attested this was the only occasion during which defendant was in her presence in the State of North Carolina. Lisa also attested that she is a "citizen and resident of Charleston, South Carolina."

In response, plaintiff also filed a sworn affidavit. In addition to the allegations in plaintiff's complaint regarding the December 2006 New Year's trip, plaintiff attested that on 17 July 2007, while he and Lisa were at their Blowing Rock home, Lisa called defendant's home on three occasions, defendant returned Lisa's calls, and defendant and Lisa spoke for approximately five minutes. Plaintiff further attested that in July 2008, he found a partially used bottle of vaginal lubricant in Lisa's bedside table. Plaintiff stated that he had never used vaginal lubricant with Lisa in their Blowing Rock home.

Depositions were also taken of both plaintiff and defendant. In his deposition, defendant admitted having sexual relations with Lisa in the States of South Carolina, New York, California, and Hawaii. Defendant also admitted that he used vaginal lubricant during sexual intercourse with Lisa, although defendant testified this was not during the period in which Lisa was still married to plaintiff.

BELL v. MOZLEY

[216 N.C. App. 540 (2011)]

At his deposition, plaintiff admitted that all of the actions alleged in his complaint, aside from the allegations concerning the December 2006 New Year's trip, occurred in the State of South Carolina. Plaintiff likewise admitted that all of the witness affidavits obtained in this case were given by individuals living in South Carolina within 50 miles of the parties. Plaintiff also admitted that he had no personal knowledge and no direct evidence of any contact between Lisa and defendant in the State of North Carolina other than the December 2006 New Year's trip.

On 20 January 2011, following a hearing at which the depositions of the parties and the affidavits of the parties and Lisa were submitted as evidence, the trial court entered two orders denying defendant's motions to dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction. Defendant timely appealed to this Court.

## II. Personal Jurisdiction

We first address defendant's argument that the trial court erred in denying his motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure. Although the order denying defendant's motion to dismiss is an interlocutory order, N.C. Gen. Stat. § 1-277(b) (2009) provides that "[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . ." *Id.* Accordingly, "the denial of [defendant]'s motion to dismiss on personal jurisdiction grounds is immediately appealable." *Bauer v. Douglas Aquatics, Inc.,* ___ N.C. App. ___, ___, 698 S.E.2d 757, 760 (2010).

"The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record[.]" *Replacements, Ltd. v. MidweSterling,* 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999). " 'Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.' " *Nat'l Util. Review, LLC v. Care Ctrs., Inc.,* 200 N.C. App. 301, 303, 683 S.E.2d 460, 463 (2009) (quoting *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). We review *de novo* the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over defendant. *Id.*

"Our courts engage in a two-step inquiry to resolve whether personal jurisdiction over a non-resident defendant is properly asserted:

BELL v. MOZLEY

[216 N.C. App. 540 (2011)]

first, North Carolina's long-arm statute must authorize jurisdiction over the defendant. If so, the court must then determine whether the exercise of jurisdiction is consistent with due process." *Bauer*, ___ N.C. App. at ___, 698 S.E.2d at 760. "A plaintiff bears the burden of establishing that some ground exists for the exercise of personal jurisdiction over a defendant." *Jaeger v. Applied Analytical Indus. Deutschland GMBH*, 159 N.C. App. 167, 170, 582 S.E.2d 640, 643-44 (2003). In the present case, defendant does not appear to dispute the applicability of North Carolina's long-arm statutory authority. Rather, defendant contends that the trial court erred in denying his motion to dismiss because plaintiff failed to establish that defendant has the necessary minimum contacts with this state to satisfy the requirements of due process. Accordingly, we limit our discussion to the issue of whether North Carolina's exercise of personal jurisdiction over defendant in the present action comports with due process of law.

"In order to satisfy the requirements of the Due Process Clause, the pivotal inquiry is whether the defendant has established 'certain minimum contacts with [the forum state] such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *MidweSterling*, 133 N.C. App. at 143, 515 S.E.2d at 49 (alteration in original) (quoting *Murphy v. Glafenhein*, 110 N.C. App. 830, 835, 431 S.E.2d 241, 244 (1993) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945))). "The relationship between the defendant and the forum state must be such that the defendant should 'reasonably anticipate being haled into' a North Carolina court." *Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 166 N.C. App. 34, 39, 600 S.E.2d 881, 885-86 (2004) (quoting *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 632, 394 S.E.2d 651, 656 (1990)). "The facts of each case determine whether the defendant's activities in the forum state satisfy due process." *Id.* at 39, 600 S.E.2d at 886.

In cases which arise from or are related to defendant's contacts with the forum, a court is said to exercise specific jurisdiction over the defendant. However, in cases . . . where defendant's contacts with the state are not related to the suit, an application of the doctrine of general jurisdiction is appropriate. Under this doctrine, jurisdiction may be asserted even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient continuous and systematic contacts between defendant and the forum state.

*Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 617, 532 S.E.2d 215, 219 (2000) (internal quotation marks and citations omitted).

In determining whether sufficient minimum contacts exist, our Courts consider (1) the quantity of the contacts between defendant and North Carolina; (2) the nature and quality of such contacts; (3) the source and connection of plaintiff's cause of action to those contacts; (4) the interest of North Carolina in having plaintiff's case tried here; and (5) the convenience to the parties. *First Union Nat'l Bank of Del. v. Bankers Wholesale Mortgage, LLC*, 153 N.C. App. 248, 253, 570 S.E.2d 217, 221 (2002). "No single factor controls, but they all must be weighed in light of fundamental fairness and the circumstances of the case." *B.F. Goodrich Co. v. Tire King*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986). In addition, "[t]his Court must also weigh and consider the interests of and fairness to the parties involved in the litigation." *Tejal Vyas*, 166 N.C. App. at 40, 600 S.E.2d at 886.

In the present case, the only evidence offered by plaintiff to establish specific jurisdiction over defendant is as follows: defendant was an invited guest at plaintiff's Blowing Rock home for approximately three days for a December 2006 New Year's holiday trip; defendant returned a phone call to Lisa while she was at the Blowing Rock home during which they spoke for approximately five minutes; plaintiff discovered lubricant in Lisa's bedside table at plaintiff's Blowing Rock home in July 2008; and defendant admitted using vaginal lubricant during sexual intercourse with Lisa in other states. It appears from the trial court's order that the trial court recognized that this evidence is insufficient to support a conclusion that the trial court retained specific jurisdiction over defendant, given the speculative and tenuous connection between defendant's contacts with Lisa in this state and plaintiff's causes of action. Thus, we review defendant's contacts with the State of North Carolina for purposes of general jurisdiction. We defer to the trial court's unchallenged findings of fact so long as they are supported by competent evidence. *Deer Corp. v. Carter*, 177 N.C. App. 314, 321, 629 S.E.2d 159, 165 (2006).

Regarding the first two factors—the quantity and nature of defendant's North Carolina contacts—the trial court made the following pertinent findings of fact: defendant is employed by Crescent, a company that is registered and certified to do business in the State of North Carolina with its headquarters in Charlotte, North Carolina;

defendant is the senior vice president of Crescent and president of the company's residential division; as president of the residential division and senior vice president of the company, "the Defendant visits Charlotte, North Carolina as many as six (6) times per year conducting business on behalf of his employer. Additionally, the Defendant communicates with the home office in Charlotte, North Carolina by telephone at least twice per month and communicates by e-mail to the Charlotte, North Carolina office from South Carolina once a week"; defendant spearheaded the company's development of property located in Burke County, North Carolina, beginning in 2005 or 2006 and visits North Carolina once every two months to supervise the "presently ongoing" project; defendant has been involved in other projects for Crescent in North Carolina, specifically a project at Lake Norman, North Carolina. Therefore, the trial court's findings of fact support the conclusion that defendant's business contacts with this state are continuous and systematic in nature.

Nonetheless, "a finding of continuous and systematic contacts does not automatically authorize the exercise of personal jurisdiction over a defendant." *Eluhu v. Rosenhaus*, 159 N.C. App. 355, 361, 583 S.E.2d 707, 712 (2003). Rather, a review of the remaining factors in the present case compel us to conclude that defendant's contacts with this state do not support a finding that due process has been satisfied for general jurisdiction over defendant in the present case.

First, regarding "the source and connection" of plaintiff's cause of action with defendant's contacts, defendant's contacts with this state, as reflected by the trial court's findings of fact, are strictly related to defendant's employment. There is no evidence in the record, nor did the trial court find as fact, that defendant has had significant contact with the State of North Carolina in any other manner. Thus, defendant's contacts are clearly not the source of and are in no way related to plaintiff's claims for alienation of affection and criminal conversation.

The next factor—the interest of the forum state—likewise heavily militates against North Carolina's exercise of personal jurisdiction in this case. In its order, the trial court made the following finding: "North Carolina's interest in providing a forum for the Plaintiff's cause of action is especially great in light of the circumstances. South Carolina has abolished the torts of Alienation of Affection and Criminal Conversation." However, this finding is directly contrary to this Court's holding in *Eluhu*, 159 N.C. App. 355, 583 S.E.2d 707.

The facts in *Eluhu* are substantially similar to the facts in the present case. *Eluhu* involved a plaintiff who was a citizen and resident of the State of Tennessee seeking damages upon allegations that the defendant had alienated the affections of the plaintiff's wife, also a citizen and resident of Tennessee. *Id.* at 356-57, 583 S.E.2d at 709. At the time the plaintiff filed his action in *Eluhu*, the defendant was a citizen and resident of the State of California. *Id.* at 356, 583 S.E.2d at 709. However, prior to moving to California, the defendant had resided in Raleigh, North Carolina, for nearly six years before residing in Nashville, Tennessee, for nearly two years. *Id.* After moving to Tennessee, the defendant in *Eluhu* made occasional visits to North Carolina to visit his wife and son, owned a house in Raleigh, North Carolina, that he rented to a third party, and vacationed in Atlantic Beach, North Carolina, for approximately three days. *Id.* at 356-57, 583 S.E.2d at 709.

Evaluating the factors for personal jurisdiction in *Eluhu*, this Court recognized that the State of North Carolina has an interest in both "providing a forum for actions based on torts that occur in North Carolina," and protecting the institution of marriage between North Carolina residents. *Id.* at 360, 362, 583 S.E.2d at 711, 712. However, as we held in *Eluhu*, such is not the case here. Rather, in the present case, as in *Eluhu*, "the evidence presented to the trial court showed that neither plaintiff nor defendant is a resident of North Carolina and that almost all of the contact between defendant and [plaintiff's wife] occurred in [another state]." *Id.* at 360, 583 S.E.2d at 711.

Moreover, this Court stated in *Eluhu*:

> Given that the tort of alienation of affection has been abolished in both [defendant's state of residence and the state in which the tortious acts admittedly occurred], but not North Carolina, and that it is a transitory tort, to which courts must apply the substantive law of the state in which the tort occurred, *plaintiff's decision to sue defendant in North Carolina smacks of forum-shopping.*

*Id.* (citations omitted) (emphasis added). Here, defendant has admitted engaging in sexual relations with Lisa in South Carolina, New York, California, and Hawaii. However, there is little, if any, evidence that defendant had sexual relations with Lisa in the State of North Carolina. In fact, plaintiff admitted in his deposition that he had no personal knowledge and no direct evidence of defendant and Lisa being together in this state. In addition, both parties to this case live

in the State of South Carolina, a vast majority of the actions alleged in plaintiff's complaint occurred in the State of South Carolina, and plaintiff has admitted that all witness affidavits obtained in this case were from individuals living within 50 miles of the parties in the State of South Carolina. Given these facts, coupled with the fact that South Carolina has abolished these torts, we are compelled to conclude that "plaintiff's decision to sue defendant in North Carolina smacks of forum-shopping." *Id.*

Furthermore, although plaintiff argues the inconvenience to defendant in litigating his claim in North Carolina is minimal given that defendant lives in a neighboring state and travels to North Carolina for business, we conclude that it would be inconvenient for defendant to defend this matter in North Carolina. Not only would defendant be required to travel in excess of five hours from his home in South Carolina more frequently than his six visits per year for business purposes, "[p]laintiff neither alleged nor attested to the existence of witnesses or evidence within North Carolina necessary to his case." *Id.* at 362, 583 S.E.2d at 712. "Without some showing of interest on the part of North Carolina in adjudicating this dispute, the inconvenience to defendant of defending the matter here is not mitigated." *Id.* Because we find the circumstances of this case strikingly similar to those in *Eluhu*, that decision is controlling here.

Thus, in light of fundamental fairness to the parties, and considering the overwhelming majority of the actions concerning the claims of plaintiff occurred in other states which have abolished the claims plaintiff is seeking to litigate against defendant in North Carolina, we conclude due process would be violated by the exercise of personal jurisdiction in this case. Although defendant's business contacts with North Carolina appear to be continuous and systematic, such contacts are insufficient in the present case to support a conclusion that defendant should "reasonably anticipate being haled into a North Carolina court" to defend any type of litigation filed against him. *Tejal Vyas*, 166 N.C. App. at 39, 600 S.E.2d at 885-86 (internal quotation marks and citation omitted).

Because we conclude the trial court cannot properly assert personal jurisdiction over defendant for plaintiff's alienation of affection and criminal conversation claims, we need not address defendant's remaining argument concerning the trial court's subject matter jurisdiction in this case.

### III. Conclusion

Based on the foregoing, we conclude that defendant does not have the requisite minimum contacts with this state for either specific or general jurisdiction purposes and that the trial court erroneously found that this state's exercise of personal jurisdiction over defendant would not violate defendant's due process rights. Accordingly, the order of the trial court must be reversed.

Reversed.

Judges HUNTER (Robert C.) and STEELMAN concur.